BY" writing, which the .parties signed, the 17th day of april 1782, the plaintiff agreed to let the defetideujt^SvesS^^ro man slave named Jacob, for the ctinsidcratLQ^TnW'^llAiJX^lfeds of nett tobacco, to continue.in the service^fcdfe"defendent. Its his own,.until that quantity of tobacco skorfld be umdni^pi the pliintiff also agreed, if Jacob should djW ^^y©kymtner accident, be rendered unfit for service, to suMín the loss, ami either put a negro of like value in his stead, ortoayAl^^É^tmínMs of tobacco, when demanded, and not to forc^tmikíeferi(leiil^fo the begiuing or middle of his crop, to receive as that the plaintiff might recover his negro again.
The negro, admitted to be a valuable labourer, was put into the possession of the defendent.
. Early in the year 1786, Richard James contracted with the plaintiff to purchase the negro Jacob for 15000 pounds of tobacco, and to pay 13000 ihereof to the defendent in inarch, when .the negro should be delivered to the purchaser, and the residue to the plaintiff at a future day.
About a fortnight before the time appointed for the first payment, James communicated the contract to the defendent, acquainting him that the tobacco would be ready accordingly, but was informed by him, that he would not deliver the negro, before the then present crop should be finished, shewing the written agreement to justify the detention till that time.
The 20th day january, 1787, the parties submitted the controversy between them, without explaning, in the submission, what was the controversy, to the arbitrament of three men, who signed a writing, which they named an award, and which is in *130 these words •• we, being chosen by John Woodson and Joseph Woodson, to arbitrate and determine a matter in dispute between them, relative to the, loan of a quantity of tobacco by John to Joseph, do make our award and determination, as follows: that is to say, that John shall have peaceable possession of Jacob, until Joseph shall redeem him by payment of 13000 pounds of tobacco; and when Joseph shall pay or tender to John that quantity of tobacco, then John shall deliver to Joseph the negro Jacob if livingT or, if not, then Joseph shall put in Johns possession another negro, of equal value, until the above quantity of tobacco shall be paid to John, agreeable to contract, considered by us, in the arbitration.
In j muary, 1788, the plaintiff brought a bill in equity against the defendent before the county court of Goochland, complaining, that the defendent, by not consenting to surrender Jacob to the man who would have purchased him of the plaintiff, and-paid the tobacco due to the defendent, in march, had broken the-agreement ; requiring an account of the p-ofits of Jacob; and praying, that the surplus of those profits, after; discharging the> annual interest of the 13000 pounds of tobacco, to secure which the slave was pledged, might be applied towards diminishing the principal debtor that 'the plaintiff might be otherwise relieved.
The defendent, by his answer, insisted, he was not accountable for the profits of Jacob, by the terms of the agreement ;-denied that he had any tobacco offered him, when Richard James applied for the delivery of Jacob, declaring, that he never thought' hims'df secure to deliver him, without first receiving the tobacco, not being bound by the contract to do so ; and clamed the benefit of the award.
The county court dismissed the bill, awarding costs, against the plaintiff; from which dismission he appealed.
By the court-, the 31 day of October, 1791 :
The award ought not to obstruct the plaintiff in his application for any redress, to which, if no award had been made, he might have been intitled ; because the terms of the award are indecisive, obliging the parties to perform nothing more than what the agreement obliged them to perform ; and it ought not, even for preventing its perdition, to be extended, by implication, so as to determine, that, by the agreement, the defendent should retain all the profits of Jacob, in satisfaction for the interest of the tobacco due to him ; for such determination, if what folio weth be right, would have been unjust,, insomuch, ut magis pereat quam valeat: and the award, so expounded,' would ap *131 p'.H. the defendants interpretation of the agreement, an agreement, which, if that be the true interpretation, pourtrays usurious oppression.
The award then being neglected, the question is, whether a i-editor, with whom a pawn, yielding a profit, is deposited, ought, to account, not having undertaken by special pact to account, for such profit? reason seems to dictate, and the precedents recollected, so far as they are applicable to the question, seem to affirm, that the creditor is accountable, a creditor, taking possession of land mortgaged to him for payment of his debt, is accountable, altho he do not, by covenant in the mortgage, or by other contract written or verbal, oblige himself to account, for the profits of the land, in the eye of reason and equity the debtors ownership of the land continues, until his right to redeem is superannuated, the security of a debt, not the sale of land, is in contemplation of the parties ; the value of the land is not compared with the debt, for the purpose of immediately payiug the one by transferring the other, although ,tl(ie creditor will, at all times when he can, take a mortgage of what is sufficient, that he may he safe, if he should bo compelled, finally, to resort to it; the debt is not discharged, but, on the contrary, the mortgage usualy contains a covenant for payment of it, and sometimes a separate obligation for the payment is granted ; and that one should be intitied to his debt, and own the laud, and the other be chargeable with the debt, and deprived of the land, at the same time, is inconsistent, the creditor then, enteriuginto the land mortgaged, possesseth the property of the debtor, and, taking the profits, likewise receiveth his property : for the owner of the land is owner of the profits, which it produeeth, also, now, when one by rig!it possesseth a thing which is the property of another, the possession is fiduciary — is for the benefit, of the owner, hence a creditor, in possession of the land mortgaged, to which he hatha legal title, is called a trustee for the debtor, who hath an equitable title, from the nature of this function therefore, without any pact, results the creditors obligation to account for the profits of the laud, no less than to restore the land, which produced the profits.
If this doctrine be sound, in the case of land mortgaged, a creditor seems charged with a similar obligation to account for the profits of a slave, pledged for payment of a debt.
No english adjudication, in any case, except that of land, resembling the principal case, is recollected.
By the roman civil law, to which recurrence is frequent in questions arising on pigneratitious contracts, the creditor was accountable for the profits of a pledge, without any distinction between land and other things.
*132 Cod. lib. 4. tit. 24. § i. Ex pignore percepti fructus iinjrctantur in debitum ; qui, si suffciunt ad totum debitum, solvitui actio, et redditur pignus ; fi debitum cxceduut, qui supererunt, redduntur; videlicet, mota actione pignei'atitia.
Ibid. § 2. Quod ex operis ancillae, vel ex pensionibus domus, qvam pignori detineri dicis, perceptum est, debiti quantitatem relevabit.
Ibid §3. Creditor,quipraediumpigrwrisibinexum.detinuit, fructus, quos percepit, velpercipere debuit, in rationen exoneraindi bebí ti computare, necesse habet: et si agrum, deterioren?, constituit, eo quoque nomine pigneratitia actione obligavit.
This differs not from the decisi ns of the english courts of equity, m cases ot land mortgaged, unless it be that, by the former the creditor is accountable, not only for profits quos percepit", hut for profits quos percipere debuit, whereas, by the latter,, he is'not accountable for profits which he might hare made.
Indeed the defendent must admit himself to be accountable-for something, notwithstanding he insists by his answer, that-' he was not: for he hath not inserted in the agreement an article for payment pf interest, and being bound to restore the pledge”) on receiving the principal debt, hath no satisfaction for it, otherwise than by the profits, now, if he be accountable for any profits, be ought to be accountable fbr the whole profits.
The decree of the county court, dismissing the plaintiffs bill, is erroneous : reverse it, and let an account be stated of the profits ot the slave Jacob, to be applied towards discharging, first,: the interest of the debt, and then the principal, if there be a surplus.
.Note, the court did not consider another question, which seemed intended to be propounded by the bill, arising thus ; by the agreement, the plaintiff was restrained from offering to pay the debt, in the begining, or middle of a crop: James would have paid the debt for the plaintiff in march : that month, by the act of 1785, cap. 63. sect 43. seemed to the plaintiffs counsil to be the time to tie accounted the beginning of a crop, now, whether was fhedefeudent bound to receive the tobacco, which, if he had not declared his resolution not to receive it, would have been offered in march ? and by his declaration, that he would not deliver up the negro before the end of the year, preventing the offer, and so defeating the contract between the plaintiff and James, ought he to make amends to the plaintiff for loss- occasioned thereby ? the court did not consider this question, be-cause the decree, as it is, was thought to do compleat justice between the parties.